NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AATIYAH HERRING, | Civil Action No. 18-3626 (JMV) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**John Michael Vazquez, U.S.D.J.**

This case concerns a claim that defense counsel was ineffective for agreeing to a waiver of appeal and right to seek postconviction relief. Petitioner Aatiyah Herring seeks relief pursuant to 28 U.S.C. § 2255. D.E. 1, 5. Respondent (the "Government") filed opposition, D.E. 8, to which Petitioner replied, D.E. 9. The Court reviewed the parties' submissions[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Petitioner's motion is denied and no certificate of appealability shall issue.

**I. Background**

**A. Criminal Case – Crim. No. 16-125**

On March 14, 2016, Herring was indicted on five counts: Count One – felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count Two – felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count Three – possession with intent to distribute heroin in

---

[1] Petitioner's brief in support of his motion will be referred to as "Br." (D.E. 5); Respondent's opposition will be referred to as "Opp." (D.E. 8); and Petitioner' reply will be referred to as "Reply" (D.E. 9). Petitioner's brief appears on the docket after his supplemental brief.

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); Count Four – possession with intent to distribute cocaine base in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Count Five – discharge of a firearm during, and in relation to, a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii). D.E. 16.[2] Counts One and Two carried a statutory maximum prison sentence of ten years, Counts Three and Four carried a statutory maximum of twenty years, and Count Five carried a statutory requirement of at least ten years in addition to any sentence imposed for a conviction on either/both Counts Three and Four.

Petitioner and the Government thereafter entered into a plea agreement in which Petitioner agreed to plead guilty to the first four counts and the Government agreed to dismiss the last count. D.E. 31. The parties also agreed to certain stipulations, which were not binding on the Court. *Id.* at 10-13. The parties agreed that Herring was a career offender pursuant to U.S.S.G. § 4B1.1(a) and that because the offense statutory maximum was twenty years or more (but less than twenty-five years), the guideline offense level could not be below 32 before any credit for acceptance of responsibility. *Id.* at 12-13. Acknowledging Herring's acceptance of responsibility, the parties stipulated that his total guidelines offense level was 29. *Id.* at 12. Herring also agreed that if he was sentenced at or below a level 29, he waived his right to appeal and to seek postconviction relief, including pursuant to Section 2255. *Id.* Herring then pled guilty on November 22, 2016. D.E. 29.

Herring was thereafter sentenced on March 7, 2017. D.E. 34. At sentencing, the Court calculated Herring's guideline offense level consistent with the parties' stipulations. D.E. 37 at 7-8. At a guideline level of 29 and with a criminal history category of VI, Herring faced a guidelines range of 151 – 188 months. If Herring had not been a career offender under the guidelines, then

---

[2] The docket entry citations in this section are taken from the criminal case, 2:16-cr-00125.

he apparently would have had a total offense level of 25 and faced a guidelines range of 110 – 137 months. Herring was sentenced to 120 months on Counts One and Two as well as 151 months on Counts Three and Four, all to be served concurrently. D.E. 35 at 1-2.

### B. Section 2255 Motion

On March 14, 2018, Petitioner filed his motion pursuant to 28 U.S.C. § 2255. D.E. 1. Because the only substantive allegation was ineffective assistance of counsel as to the appeal waiver, the Court dismissed the motion without prejudice because it failed to provide any additional facts or information in support of the claim, save for an attached "Motion to Supplement" which apparently referred to a separate case unrelated to Petitioner. D.E. 4. Petitioner then refiled his motion, again claiming that his counsel was "[i]neffective on [a]ppeal [w]aiver, but also including five pages of substantive factual allegations and legal analysis.

## II. Standard

Section 2255 provides in relevant part as follows:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
> . . .
> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>  (1) the date on which the judgment of conviction becomes final;
>  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. *See also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (observing that Section 2255 relief is only available when the error, among other things, was a "'fundamental defect which inherently results in a complete miscarriage of justice'" (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))).

Claims of ineffective assistance of counsel are governed by the standard set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner bears the burden of demonstrating, first, "that counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). The "proper standard . . . is that of 'reasonably effective assistance'" in determining whether counsel's performance was deficient under *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" based on the particular facts of a petitioner's case, viewed as of the time of the counsel's challenged conduct. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

A petitioner must also show prejudice. Pursuant to *Strickland*, a habeas petitioner must also demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. "It is not enough for the [petitioner] to show that the errors had

some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

To be clear, the Sixth Amendment right to effective assistance of counsel extends beyond trial to other facets of criminal proceedings, such as sentencing. *United States v. Sepling*, 944 F.3d 138, 144 (3d Cir. 2019) (citing *Glover v. United States*, 531 U.S. 198 (2001)). The right to effective assistance of counsel also extends to an attorney's advice as to entering a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012); *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's performance fell below an objective standard of reasonableness before addressing whether the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### III. Analysis

Petitioner argues that his trial counsel was ineffective because his attorney did not explain the existence of the decisions in *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *Chang-Cruz v. Attorney General*, 659 F. App'x 114 (3d Cir. 2018). Br. at 15-16. Petitioner explains that he had asked his counsel if Petitioner's two prior convictions under N.J.S.A. 2C:35-7 qualified as controlled substance offenses under U.S.S.G. § 4B1.1, and that his attorney indicated that they did, through a letter with legal analysis. *Id.* at 14. Petitioner argues that in light of *Mathis* and *Chang-*

5

*Cruz*, his attorney was wrong and that Petitioner would not have agreed to the appeal waiver if he had known of the decisions. *Id.* at 17-19.

The Government responds that Herring's lawyer was not deficient because counsel provided a correct interpretation of the law. Opp. at 3. The Government also points to, in support, Judge Chesler's decision in *Jackson v. United States*, Civ. No. 17-4707, 2018 WL 4828409 (D.N.J. Oct. 4, 2018). Opp. at 4.

At the outset, it is not entirely clear that Petitioner's request, if successful, will necessarily result in the relief that he seeks. Petitioner effectively requests that the Court find his counsel ineffective and thereby permit Petitioner to appeal his sentence. However, at a more fundamental level, it appears that Petitioner is actually arguing that his counsel was ineffective for advising Petitioner to enter into the stipulations in his plea agreement, specifically, the acknowledgement that Herring was a career offender pursuant to U.S.S.G. § 4B1.1(a) (and the corresponding impact on his guideline level). Again, it appears, that Petitioner is asserting that his counsel should not have agreed to this stipulation and then should have argued against its application at sentencing. Finally, it appears, that Petitioner is concluding that if counsel had done so, the Court would have agreed with Petitioner and not applied Section 4B1.1(a).

U.S.S.G. § 4B1.1(a) provides that a defendant is a career offender if, among other things, he has at least two prior convictions for a "controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" is defined in the following manner under the guidelines:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

The underlying state statute at issue is N.J.S.A. § 2C:35-7, which provides in relevant part as follows:

> Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in N.J.S. 2C:35-12, be sentenced by the court to a term of imprisonment.

N.J.S.A. § 2C:35-7(a). N.J.S.A. § 2C:35-5(a), in turn, makes it unlawful for a person knowingly or purposely "[t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog" or "[t]o create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance." N.J.S.A. § 2C:35-5(a).

In *Mathis*, the petitioner pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), which carried a ten-year statutory maximum. 136 S. Ct. at 2248, 2250. He was thereafter sentenced to a fifteen-year mandatory minimum under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). *Id.* The ACCA applied to a person with three prior convictions for a "violent felony," including burglary, arson, or extortion. *Id.* at 2247-48.

The *Mathis* Court explained that burglary, arson, and extortion under the ACCA applied only to the offenses' "generic versions" rather than all variations. *Id.* at 2248 (citing *Taylor v. United States,* 495 U.S. 575, 598 (1990)). For burglary, the Supreme Court continued, the generic version was an offense "'containing the following elements: an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime.'" *Id.* (quoting *Taylor*, 495 U.S. at 598). The Supreme Court instructed that in determining whether a prior conviction met

7

generic burglary, a court should apply the "categorical approach," meaning solely reviewing the elements – not facts – of an underlying offense and comparing them with generic burglary. *Id.* at 2248. Yet, the Supreme Court recognized, some statutes list elements in the alternative. *Id.* at 2249. In such cases, the Supreme Court continued, a court must employ the "modified categorical approach," which permits a court to review "a limited class of documents," such as the indictment, jury instructions, plea agreement, or plea colloquy. *Id.* The Court in *Mathis* stated that a court must review the documents to determine which specific crime, and elements, a defendant had been convicted of and then decide if it matched the generic offense. *Id.*

The petitioner in *Mathis* had previously been convicted of burglary in Iowa, and the Iowa statute was broader than generic burglary; the statute covered "any building, structure, [or] land, water, or air vehicle." *Id.* (alteration in original) (quoting Iowa Code § 702.12). The *Mathis* Court noted, however, that the Iowa Supreme Court had already determined that the listed areas were not alternative elements but instead alternative means of meeting a single locational element. *Id.* (citing *State v. Duncan*, 312 N.W. 2d 519, 523 (Iowa 1981)). The difference – element or means – was critical; an element meant that a jury had to unanimously agree that the prosecution had proven beyond a reasonable doubt the element while means indicated that the jury did not have to unanimously agree as to a particular means so long as they all voted that the prosecution had established the particular element beyond a reasonable doubt. *Id.* at 2253.[3] The Supreme Court concluded that reviewing the means – or facts – of an underlying offense was irrelevant in performing either a categorical or modified categorical review:

---

[3] The Supreme Court used the example of a statute prohibiting the use of a "deadly weapon," indicating that knife or gun would qualify. *Id.* at 2249 (citations omitted). The element – a deadly weapon – would have to be proven beyond a reasonable doubt and unanimously agreed to by the jury for conviction, but the jury would not have to be unanimous as to the means – some could conclude that a gun was used while others could agree that a knife was used. *Id.* (citations omitted).

8

> For these reasons, the court below erred in applying the modified categorical approach to determine the means by which Mathis committed his prior crimes. *United States v. Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015). ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence. And indeed, our cases involving the modified categorical approach have already made exactly that point. "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which *element[s]* played a part in the defendant's conviction." *Descamps*, 570 U.S. [254, 263-64 (2013)] (emphasis added); *see Taylor*, 495 U.S. at 602 (noting that the modified approach may be employed only to determine whether "a jury necessarily had to find" each element of generic burglary). In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque. *See Descamps*, 570 U.S. at [263-64]. It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

*Id.* at 2253-54 (footnote omitted).[4]

In *Chang-Cruz*, a non-precedential opinion from the Third Circuit, Chang-Cruz was from Ecuador and entered the United States in 1987. 659 F. App'x at 115. He thereafter pled guilty to two violations of N.J.S.A. § 2C:35-7(a). *Id.* Immigration authorities later informed Chang-Cruz that he was removable because Section 2C:35-7(a) violations "involved a controlled substance, *see* 8 U.S.C. § 1227(a)(2)(B)(i), and [were] aggravated felonies—namely, offenses involving drug trafficking, *see* 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii)[.]" *Id.* After reviewing the transcripts from Chang-Cruz's criminal plea colloquy, the immigration judge concluded that

---

[4] The *Mathis* decision was a plurality opinion. Justice Kennedy concurred, asserting that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) was incorrect. *Id.* at 2258 (Kennedy, J., concurring). Justice Thomas also concurred, stating that "I continue to believe that depending on judge-found facts in Armed Career Criminal Act (ACCA) cases violates the Sixth Amendment and is irreconcilable with *Apprendi*." *Id.* at 2259. (Thomas, J., concurring).

9

Chang-Cruz had been convicted of aggravated felonies and was therefore ineligible for cancellation of removal; the Board of Immigration Appeals affirmed. *Id.* at 115-16.

The Third Circuit reversed. The Circuit began by indicating that 8 U.S.C. § 1101(a)(43)(B) included as an aggravated felony a "drug trafficking crime" under 18 U.S.C. § 924(c), which include a felony punishable under the Controlled Substances Act. *Id.* at 116. As a result, the Third Circuit continued, Chang-Cruz's convictions fell under the "hypothetical federal felony" category set forth in *Avila v. Attorney General*, 826 F.3d 662, 667 (3d Cir. 2016). *Id.* at 117. The *Chang-Cruz* court then discussed the categorical and modified categorical approaches to review. *Id.* (citing *Mathis*, 136 S. Ct. at 2254 & n.4; *Moncrieffe v. Holder*, 569 U.S. 184 (2013)) (other citations omitted).

Following *Mathis*, the Third Circuit concluded that resolution depended on whether "distribution" and "dispensing" in N.J.S.A. § 2C:35-7(a) comprised alternative elements or alternative means. *Id.* at 117-18. The court in *Chang-Cruz* decided that "distribution" and "dispensing" were alternative means rather than elements.[5] *Id.* The Third Circuit also determined that due to the ambiguity in § 2C:35-7(a), it was unable to "satisfy the 'demand for certainty'" that Chang-Cruz had actually been convicted of a "generic federal offense." *Id.* (quoting *Mathis*, 136 S. Ct. at 2257). Thus, the Circuit determined that Chang-Cruz had not been convicted of an aggravated felony. *Id.*

Petitioner apparently argues that in light of *Mathis* and *Chang-Cruz*, his prior convictions for violating § 2C:35-7(a) cannot be considered "controlled substance offenses" under U.S.S.G. § 4B1.1(a). The Court disagrees for two reasons. The first is textual. Here, Section 4B1.2(b)

---

[5] The Circuit did not identify the element in § 2C:35-7(a) to which the means of distribution or dispensing applied.

includes both "distributing" and "dispensing." This language difference was also critical to Judge Chesler in deciding *Jackson*, 2018 WL 4828409, at *2 ("[T]he federal and state definitions match[.]"). By comparison, the ACCA did not define "burglary, arson, or extortion[.]" 18 U.S.C. § 924(e)(2)(B)(ii), so the Supreme Court had to consider "generic versions" of each offense, meaning the offense as they were understood at common law. Similarly, the federal statutes at issue in *Chang-Cruz* prohibited distribution but were silent as to dispensing.

Second, Petitioner's request is based on an argument concerning *guideline* application rather than *statutory* interpretation. Petitioner's sentence here did not expose him to imprisonment above the statutory maximums of the charges to which he pled, as was the case in *Mathis*. The Court reaches this conclusion in light of the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017). Before *Beckles*, the Supreme Court had decided in *Johnson v. United States*, 135 S. Ct. 2251 (2017) that the residual clause in the ACCA defining "crime of violence," 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. In *Beckles*, the Supreme Court confronted an identical definition of "crime of violence" as the definition in U.S.S.G. § 4B1.2(a)(2). 137 S. Ct. at 890. The Court in *Beckles* observed that "our cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered." *Id.* at 893. The Supreme Court concluded that "[b]ecause they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge." *Id.* at 894. Thus, it is difficult for this Court to conclude that Petitioner is entitled to relief when Section 4B1.2 expressly includes the language at issue in N.J.S.A. § 2C:35-7(a), while another criminal defendant would not be so fortunate if he challenged language in the same guideline section concerning a "crime of

violence" even though the precise language had been found unconstitutionally vague when used in a federal criminal statute.

As a result, the Court concludes that Petitioner has not shown prejudice under *Strickland*; Petitioner has not demonstrated a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Because Petitioner's motion raised a purely legal argument, a hearing is not necessary in this matter. In addition, no certificate of appealability will issue because Petitioner has not made the requisite showing. 28 U.S.C. § 2253(c)(2).

## IV. Conclusion

For the foregoing reasons, Petitioner's motion for relief under 28 U.S.C. § 2255 is denied and a certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.

Date: January 21, 2020

*[signature]*
HON. JOHN M. VAZQUEZ,
United States District Judge